UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

BANC OF AMERICA LEASING                    CIVIL ACTION NO: 6:17-cv-00190
& CAPITAL, LLC

VERSUS                                     UNASSIGNED DISTRICT JUDGE

BREAKWATER ADVANCED                        MAGISTRATE JUDGE HANNA
MANUFACTURING, LLC, ET AL.

## REPORT AND RECOMMENDATION

Currently pending is the plaintiff's motion for default judgment [Rec. Doc. 22]

seeking the entry of a default judgment against the defendants, Breakwater Advanced

Manufacturing, LLC, Bryan Benoit, Greg David, and Mark Leach. The deadline for

filing an opposition has expired, and no opposition brief was filed. An evidentiary

hearing was held on March 22, 2018. The motion was referred to the undersigned for

review, report, and recommendation in accordance with the provisions of 28 U.S.C.

§ 636 and the standing orders of this Court. For the following reasons, it is

recommended that the motion be granted.

## BACKGROUND

This case arises from two Master Security Agreements and an Additional

Collateral Agreement that were executed by defendant Breakwater Advanced

Manufacturing, LLC ("Breakwater") and personally guaranteed by defendants Bryan

Benoit, Greg David, and Mark Leach.

On July 16, 2014, Breakwater executed the first Master Security Agreement ("July MSA") with Mazak Corporation ("Mazak"). Pursuant to the July MSA, Breakwater purchased the Mazak QTN-350 MY2KY and was obligated to pay a down payment of $28,448.95 and 60 monthly installment payments of $4,458.51.[1] As collateral, Breakwater also granted Mazak a lien and security interest in the Mazak QTN-350 MY2KY.[2] As further consideration of the extension of credit, Breakwater also granted Banc of America Leasing & Capital, LLC ("Banc of America") a security interest in a 2012 Mazak M5[3] pursuant to an Additional Collateral Agreement dated July 23, 2014.[4]

On November 25, 2014, Breakwater executed their second Master Security Agreement ("November MSA") with Mazak. Pursuant to the November MSA, Breakwater purchased the Mazak Slant Turn Nexus 550 and was obligated to pay a down payment of $75,115.39 and 60 monthly installment payments of $7,974.31.[5] As

---

[1]     Exh. 1, p. 7.

[2]     Specifically identified as Mazak QTN MY2KY 60", S/N 255423, including all substitutions, additions, attachments, replacements, accessions, and the proceeds of all of the foregoing.

[3]     Specifically identified as 2012 Mazak M5, S/N 236867.

[4]     Exh. 2.

[5]     Exh. 4, p.7.

collateral, Breakwater also granted Mazak a security interest in the Mazak Slant Turn Nexus 550.[6]  Mazak is the assignee of all of their original rights under the July MSA and November MSA and Banc of America's rights under the Additional Collateral Agreement.[7]

The two Master Security Agreements that were executed between Breakwater and Mazak are nearly identical and contain the same provisions except for the last page. The last page contains the heading "Schedule" and specifically describes the equipment and the payment terms of each loan. Both Master Security Agreements provide for an acceleration of payment when an "Event of Default" occurs. According to the Master Security Agreements, an "Event of Default" can occur when Breakwater fails to pay any of the required monthly installment payments under the agreement. If an event of default occurs, the Master Security Agreements provide that the:

> "Lender may, by notice to Buyer, declare all Secured Obligations immediately due and payable in full, and, in addition to all rights and remedies of a secured party available under the applicable Uniform Commercial Code, other applicable statutes or rules, or at law or in equity, in any jurisdiction in which enforcement is sought, all such rights

---

[6]    Specifically identified as Mazak Slant Turn Nexus 550, S/N 258358 including all substitutions, additions, attachments, replacements, accessions and the proceeds of all the foregoing.

[7]    Mazak assigned all of their rights under the July MSA and November MSA to Banc of America. [Rec. Docs. 1-6 and 1-13] Then, Banc of America assigned all of their rights under the Additional Collateral Agreement and their rights under the July MSA and November MSA to Mazak. [Rec. Doc. 32-1]. Therefore, Mazak is the assignee of all rights under the July MSA, November MSA, and Additional Collateral Agreement.

and remedies being cumulative and not exhaustive and subject to successive or concurrent enforcement."[8]

In addition, the Master Security Agreements provide that "Buyer shall pay Lender for all expenses (including reasonable attorneys' fees), incurred in the enforcement of any term of this Agreement, or in the execution on, or sale of, the Collateral."[9]

Defendants Bryan Benoit, Greg David, and Mark Leach executed an individual guarantee for the July MSA and an individual guarantee for the November MSA.[10] The two individual guaranties are nearly identical, except for the description of the equipment and the equipment's cost, and both are signed and dated by each guarantor. Pursuant to both individual guarantees, Benoit, David and Leach promised,

"For valuable consideration, the receipt of which is hereby acknowledged, the undersigned jointly, severally and unconditionally guarantee to MAZAK CORPORATION ("Lender") the full and prompt performance by the Buyer/ Debtor identified above [Breakwater Advanced Manufacturing, LLC] (hereinafter called "Buyer"), of all obligations which Buyer now has or may hereafter have to Lender including, but not limited to, obligations under conditional sales or security contracts and contract schedules executed in connection with anticipated conditional sales contracts such as all present and future Contract schedules under the Master Security Agreement and the Equipment Cost identified above; and unconditionally guarantee the prompt payment when due (whether at scheduled maturity, upon acceleration or otherwise) of any and all sums, indebtedness and

---

[8]    Exh. 1, p. 3 ¶ 9 and Exh. 4, p.3 ¶ 9.

[9]    Exh. 1, p. 3 ¶ 9 and Exh. 4, p.3 ¶ 9.

[10]    Exh. 3 and Exh. 5.

liabilities of whatsoever nature, due or to become due, direct or indirect, absolute or contingent, now or hereafter at any time owed or contracted by Buyer to Lender, and all losses, costs and expenses of or incidental to Buyer's default or collection of any of the foregoing, including reasonable attorneys' fees (all of the foregoing hereinafter called "Obligations")."[11]

Then, Benoit, David, and Leach reaffirmed their guaranties through the execution of two separate Revision Agreements that are both dated June 6, 2016.[12] The Revision Agreements also modified the payment terms of the two Master Security Agreements by providing a three-month deferral period, during which Breakwater agreed to pay interest payments, and extending the contract terms from 60 to 63 months.[13]

The plaintiff alleges that an Event of Default occurred under both of the Master Security Agreements when Breakwater did not pay its monthly installments that were due in September 2016.[14] As a result, the plaintiff alleges that the defendants were notified that it was exercising its rights under the acceleration clause of the Master Security Agreements and declaring the defendants' obligations immediately due and

---

[11]    Exh. 3 ¶ 1 and Exh. 5 ¶ 1.

[12]    Rec. Docs. 1-17 and 1-18.

[13]    Rec. Docs. 1-17 and 1-18.

[14]    Rec. Doc. 1, p. 6 ¶ 35.

5

payable in full.[15]

On January 25, 2017, the plaintiff[16] filed the present lawsuit in which it alleges that defendants, Breakwater, Benoit, David, and Leach are jointly and solidarily liable for all amounts owed under the loan documents, including all costs and expenses of enforcement and reasonable attorney's fees. The plaintiff also requested a writ of sequestration[17] and a judgment recognizing its security interests in the Mazak QTN-350 MY2KY, the 2012 Mazak M5 and the Mazak Slant Turn Nexus 550.

All four defendants were served. On February 2, 2017, David and Leach were served by leaving a copy of the summons and complaint at their individual places of residence with a person of suitable age and discretion who resides there.[18] On February 5, 2017, Benoit was personally served[19] and Breakwater was served with a copy of the summons and complaint by personal service on its registered agent.[20]

On February 23, 2017, the defendants filed an answer that was signed by an

---

[15]    Rec. Doc. 1, p. 6 ¶36-37.

[16]    The complaint was originally filed by Banc of America. However, Banc of America assigned their rights to Mazak and the Court granted a motion to substitute party plaintiff. [Rec. Doc. 38]. Therefore, Mazak is now the named plaintiff in this action.

[17]    A writ of sequestration was issued on February 10, 2017. [Rec. Doc. 9].

[18]    Rec. Docs. 10 and 11.

[19]    Rec. Doc. 13.

[20]    Rec. Doc. 12.

attorney that is not admitted to practice law in the Western District of Louisiana. As a result, the Clerk of Court issued a notice of deficiency and the defendants were advised that they had 10 days to submit a corrective document or their answer would be stricken by the Court.[21]  The defendants did not submit a corrective document and their answer was stricken from the record on March 23, 2017.[22]

On April 6, 2017, the plaintiff filed an unopposed motion to stay the case because the parties executed a Settlement and Forbearance Agreement that forbears the plaintiff from taking further action to enforce its remedies under the Master Security Agreements until certain events occur.[23] The motion to stay was granted and the case was stayed until May 27, 2017.[24]

On May 30, 2017, the plaintiff filed a motion for entry of default against the defendants and subsequently an entry of default was issued by the Clerk of Court .[25] On July 14, 2017, the plaintiff filed the present  motion for default judgment.[26]

---

[21]     Rec. Doc. 15.

[22]     Rec. Doc. 17.

[23]     Rec. Doc. 18.

[24]     Rec. Doc. 19.

[25]     Rec. Doc. 21.

[26]     Rec. Doc. 22.

## LAW AND ANALYSIS

Rule 55 of the Federal Rules of Civil Procedure governs applications for default judgment. It states that a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."[27] However, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."[28] Therefore, even when a defendant is technically in default, a "party is not entitled to a default judgment as a matter of right."[29] This principle, however, is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion."[30] Therefore, the entry of a default judgment is committed to the discretion of the district court.[31]

## A. The Procedural Requirements For A Default Judgment Have Been Satisfied

Three procedural steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk of Court's office; and (3) issuance

---

[27]    Fed. R. Civ. P. 55(a).

[28]    *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).

[29]    *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).

[30]    *Rogers v. Hartford Life & Acc. Ins. Co*., 167 F.3d 933, 936 (5th Cir. 1999) (quoting *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)).

[31]    *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

8

of a default judgment by the district court.[32]

A default occurs when a defendant fails to respond to the complaint within the time required by the Federal Rules of Civil Procedure.[33]  The Clerk of Court must enter default when the defendant's failure to plead is shown by affidavit or otherwise.[34]  Such a showing must establish that the defendant was properly served but failed to file an answer.[35]  Therefore, "the propriety of the entry of default is dependent on the propriety of service."[36] In this case, there has been no objection to the method of service or the fact that service was made on the defendants. Therefore, the clerk properly entered default.

After the clerk's entry of default, a default judgment may be issued by the clerk of court if the claim is for a sum certain or a sum that can be made certain by calculation, but in all other cases may be entered by the court on the motion of the

---

[32]     *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).

[33]     *New York Life Ins. Co. v. Brown*, 84 F.3d at 141.

[34]     Fed. R. Civ. P. 55(a).

[35]     *Cycle Sport, L.L.C. v. Dinli Metal Indus. Co., Ltd*., No. 3:07-CV-00253-O, 2008 WL 4791544, at *3 (N.D. Tex. Oct. 30, 2008).

[36]     *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-cv-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016).  See, also, *Cycle Sport v. Dinli*, 2008 WL 4791544, at *3.

plaintiff.[37]  Thus, a plaintiff may apply to the district court for a judgment based on the default, which the plaintiff has done in this case.

Before issuing a judgment of default, the court must ascertain that the defendant is neither a minor, an incompetent person, or in military service or otherwise subject to the Soldiers and Sailors Relief Act of 1940.[38]  Because it is a limited liability company, Breakwater cannot fit into these categories, and there is no evidence that Benoit, David, or Leach personally belong in any of these categories either.[39]  Therefore, these factors do not preclude a default judgment in this case.

When the defendant has appeared in the action prior to the issuance of a judgment of default, the defendant must be provided with notice of the application for default judgment at least three days prior to the hearing on the default judgment.[40]  In this case, however, this requirement need not be met since neither Breakwater, Benoit, David, or Leach have appeared in the suit before default was entered.

Accordingly, this Court concludes that all of the procedural prerequisites for the issuance of a default judgment have been satisfied in this case.

---

[37]    Fed. R. Civ. P. 55(b).

[38]    Fed. R. Civ. P. 55(a).

[39]    The plaintiff submitted Status Reports of the Department of Defense Manpower Data Center that establishes Benoit, David, and Leach are not members of the U.S. military services or any of its allies within the purview of the Service Members Civil Relief Act. [Rec. Doc. 22-4].

[40]    Fed. R. Civ. P. 55(b)(2).

**B. Issuance of a Default Judgment is Appropriate**

A district court in the Fifth Circuit looks to the following six factors when considering whether to grant a default judgment: 1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; 3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think it was obligated to set aside the default on the defendant's motion.[41]   Any doubt as to whether to enter or set aside a default judgment must be resolved in favor of the defaulting party.[42]   Having considered the relevant factors, this Court concludes that default judgment is warranted.

First, there are no material facts in dispute.  Upon entry of default by the Clerk of Court, the defendants are deemed to have admitted to the allegations of the complaint. When, as in this case, a default has been entered by the Clerk of Court under Fed. R. Civ. P. 55(a), the factual allegations of the complaint are taken as true,[43] but "a defendant's default does not in itself warrant the court in entering a default judgment;" rather, "[t]here must be a sufficient basis in the pleadings for the judgment

---

[41]        *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

[42]        *Chavers v. Hall*, 488 Fed. App'x 874, 878-79 (5th Cir. 2012)

[43]        10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2688 (3d ed. 1998).

11

entered."[44]  Only well-pleaded facts, not conclusions of law, are presumed to be true.[45]

In determining whether there is a sufficient basis in the pleadings for judgment, the

Fifth Circuit "draw[s] meaning from the case law on Rule 8."[46]  Factual allegations

in the complaint need only "be enough to raise a right to relief above the speculative

level, on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)."[47]  Detailed factual allegations are not required.[48]  This standard

creates a low threshold.[49]  Taking the factual allegations set forth in the complaint and

exhibits as true, as explained above, this Court finds that the plaintiff has asserted a

plausible claim against the defendants.

Second, it is undisputed that the defendants have not properly responded to the

complaint. The defendants' answer was deficient because it was signed by an attorney

that is not admitted to practice in the Western District of Louisiana.[50]  The clerk issued

---

[44]    *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d at 1206.

[45]    *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d at 1206.

[46]    *Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490, 497 (5th Cir. 2015).

[47]    *Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[48]    *Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d at 498 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[49]    *Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d at 498.

[50]    Rec. Doc. 14.

a deficiency notice and allowed the defendants ten days to cure the deficiency.[51] The deficiency was not cured and their answer was stricken from the record.[52] Nevertheless, the Court held a telephone conference to determine whether the defendants were represented by counsel. During the conference, Leslie Adams, the same attorney that filed the defendants' deficient answer, advised the Court that he would represent the defendants by obtaining local counsel and appearing pro hac vice.[53] As a result, the Court issued an order that Leslie Adams had ten days to file a motion to enroll pro hac vice or have an attorney that is admitted to practice in the Western District of Louisiana enroll on behalf of the defendants.[54] The defendants did not comply with the Court's order and have made no further effort to respond to this lawsuit. Therefore, the defendants "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [Mazak's] interests."[55]

Third, the grounds for default judgment against the defendants are clearly established, as outlined above.

Fourth, there is no evidence indicating that the defendants' failure to answer

---

[51]    Rec. Doc. 15.

[52]    Rec. Doc. 17.

[53]    Rec. Doc. 26.

[54]    Rec. Doc. 27.

[55]    *Taylor v. City of Baton Rouge*, 39 F.Supp.3d 807, 814 (M.D. La. 2014).

or file a responsive pleading was the result of a good faith mistake or excusable neglect. To the contrary, the defendants have been provided multiple opportunities to correct their deficient answer, but have failed to comply with the orders of the Court. Furthermore, the defendants have failed to present any evidence to establish that such failure was due to a good faith mistake or excusable neglect.

Fifth, the defendants failure to file a sufficient answer or otherwise defend the present lawsuit for over a year mitigates the harshness of the default judgment.

Finally, this Court is unaware of any facts that would give rise to "good cause" to set aside the default judgment if challenged by the defendants.

Accordingly, the factors that must be considered before a default judgment can be entered point to the conclusion that it would be appropriate to issue default judgment in this case.

## C. Calculation of Damages

The final step in the default judgment analysis is the determination of what relief, if any, the plaintiff should receive.

"A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages."[56] Damages for a default

---

[56]     *Ins. Co. Of the W. V. H & G Contractors, Inc.* 2011 WL 4738197, at *4 (S.D. Tex. 2011) (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524-525 (5th Cir. 2002).

judgment must be proven by a hearing or a demonstration of detailed affidavits establishing the necessary facts.[57] If the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary.[58]  In this case, an evidentiary hearing was held and the plaintiff introduced exhibits that were already in the record. The plaintiff advised the Court that it would only seek the unpaid balance under the July MSA and the November MSA and would not seek the interest that their brief asserted. As a result, the Court determined that the amount of damages was a sum certain and no testimony was heard.

The plaintiff seeks judgment against the defendants in the amount of $476,843.36 for the unpaid balance under the July MSA and November MSA. This amount is verified by the declaration of Veronika Rager, the vice-president, Credit Officer I of Banc of America[59] and the bank statements that were attached to her declaration and then introduced as an exhibit.

Pursuant to the July MSA, the defendants were obligated to make 60 payments

---

[57]    See *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

[58]    *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

[59]    Rec. Doc. 22-2.

of $4,458.51 for the total amount of $267,510.60.[60] The defendants were also obligated under the November MSA to make 60 payments of $7,974.31 for the total amount of $478,458.60.[61] The bank statements indicate that the defendants made payments under the July MSA in the amount of $117,111.69 and payments under the November MSA in the amount of $152,014.15.[62] This amount includes the defendants monthly payments under the terms of the agreements and the payments that were made as part of their Settlement and Forbearance Agreement.[63] Therefore, the total unpaid balance under the July MSA is $150,398.91 and the total unpaid balance under the November MSA is $326,444.45 for a combined total of $476,843.36.[64] Accordingly, this Court finds that the plaintiff has submitted sufficient evidence to support their claims for damages in the amount of $476,843.36.

The Court also finds that the plaintiff has submitted sufficient evidence that the

---

[60]     Exh. 1.

[61]     Exh. 4.

[62]     Exh. 8.

[63]     The parties previously entered into a Settlement and Forbearance Agreement. Under the Agreement, the plaintiff would dismiss the present lawsuit if the defendants made payments according to a specific schedule. The defendants made two payments for a total amount of $64,800, but ultimately breached the agreement by not paying their obligated amounts in full. The plaintiff applied the amount paid to the principal due under the July MSA and the November MSA, where half of the amount paid or $32,400 was applied to each loan.

[64]     Exh. 10.

defendants granted it a valid security interest in certain equipment. First, as the assignee of the July MSA, the plaintiff has a valid security interest in the Mazak QTN MY2KY 60", S/N 255423, including all substitutions, additions, attachments, replacements, accessions, and the proceeds of all of the foregoing. Then, as the assignee of the Additional Collateral Agreement, the plaintiff has a valid security interest in the 2012 Mazak M5, S/N 236867. Lastly, as the assignee of the November MSA, the plaintiff has a valid security interest in the Mazak Slant Turn Nexus 550, S/N 258358 including all substitutions, additions, attachments, replacements, accessions and the proceeds of all the foregoing.

The Court further finds that the plaintiff is entitled to recover its reasonable attorney's fees and all costs and expenses of enforcement pursuant to the July MSA and the November MSA. However, the plaintiff advised the Court that it will reserve its right to file a motion after judgment to establish the amount of their attorney's fees and costs. Therefore, the Court will defer consideration of the amount of attorney's fees and costs at this time.

## **CONCLUSION**

For the foregoing reasons, the undersigned finds that the plaintiff is entitled to recover the full sum of $476,843.36 and recommends that the plaintiff's motion for default judgment [Rec. Doc. 22] be GRANTED, and a judgment of default issued, ordering defendants, Breakwater Advanced Manufacturing, LLC, Bryan Benoit, Greg David, and Mark Leach to pay Mazak Corporation the sum of $476,843.36 and recognizing Mazak Corporation's security interest in the following equipment: (1) the Mazak QTN MY2KY 60", S/N 255423; (2) the 2012 Mazak M5, S/N 236867; and (3) the Mazak Slant Turn Nexus 550, S/N 258358.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except

18

upon grounds of plain error. See *Douglas v. United Services Automobile Association,*
79 F.3d 1415 (5th Cir. 1996).

Signed this 27th day of March 2018, at Lafayette, Louisiana.

_____

**PATRICK J. HANNA**
**UNITED STATES MAGISTRATE JUDGE**